UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Equal Employment
Opportunity Commission,

        Plaintiff,          **MEMORANDUM OPINION AND ORDER**

v.          Civil No. 14-4517 ADM/TNL

Honeywell International, Inc.,

        Defendant.

_____

Laurie Vasichek, Esq., Equal Employment Opportunity Commission, Minneapolis, MN, on behalf of Plaintiff.

Michael Burkhardt, Esq., Morgan Lewis & Bockius LLP, Philadelphia, PA, on behalf of Defendant.

_____

## I. INTRODUCTION

On November 3, 2014, the undersigned United States District Judge heard oral argument on the Equal Employment Opportunity Commission's ("EEOC") Motion for a Preliminary Injunction [Docket No. 2] against Honeywell International, Inc. ("Honeywell"). As articulated at the hearing, and for the reasons discussed below, the EEOC's motion is denied.

## II. BACKGROUND

The EEOC seeks to immediately enjoin Honeywell from levying all penalties and costs—including withholding Health Savings Account ("HSA") contributions—against any Honeywell employee who refuses to undergo biomedical testing in conjunction with Honeywell's corporate wellness program. The EEOC does not allege that Honeywell's wellness program violates employees' right to privacy in their medical information, nor does the EEOC request that the Court order Honeywell to cease the biometric testing associated with its wellness

program.

## A. Honeywell's Corporate Wellness Program

Honeywell employees and their families have the option of participating in Honeywell's High Deductible Health Plan ("HDHP"), a self-insured group plan sponsored by Honeywell. Gregg Decl. [Docket No. 21] ¶ 3. HDHP enrollees can choose to participate in Honeywell's wellness program, which is designed to inform participants about their health status, encourage improvement of specific health goals and ultimately reduce claim costs. Id. ¶ 8. Employees who participate in the wellness program agree to undergo biometric testing. Id. ¶ 10. Employees who choose not to participate in the wellness program are not disciplined or terminated, but they are subject to financial surcharges. Id. ¶ 9 and ¶¶ 19-20.

Honeywell works with an independent third-party actuarial firm to perform underwriting analysis of its health plan each year. Id. ¶ 44. Analysis of past claims informs the future design and pricing of Honeywell's health plan, including its wellness program. Id.

### 1. Biomedical Testing

The biomedical testing administered as part of Honeywell's wellness program requires a blood sample that is screened for the following data: blood pressure; height; weight; waist circumference; and cholesterol, glucose and nicotine levels. Id. ¶ 11. Employees and their spouses can complete the biomedical testing for free through Quest Diagnostics ("Quest") or, in the alternative, employees can have their personal physician fill out a form indicating the basic health data identified above. Id. ¶ 14. Quest relays the collected data to an independent health management company; Honeywell receives aggregate data but is not informed of individual

employee test results.  Id. ¶ 16.[1]

### 2. Incentives and Surcharges

Employees who participate in the wellness program become eligible for a HSA.  Id. ¶ 19. This incentive is available only for employees whose annual salary is below $100,000.  Id. Honeywell's annual contribution to the HSAs of qualified employees ranges from $250 to $1,500.  Id. ¶ 9.  Employees who choose not to participate in the wellness program do not qualify for a company-sponsored HSA and must also pay a $500 surcharge that goes toward their annual health insurance contribution.  Id.  This amounts to a pre-tax monthly deduction of $41.67.  Id. ¶ 20. This surcharge is not levied against employees whose spouses refuse to undergo the biomedical testing.  Id.

Honeywell employees and their spouses who are covered by Honeywell's HDHP plan may also be subject to a $1000 nicotine surcharge.  Id. ¶ 24.  Employees (and spouses) who refuse to undergo biomedical testing are presumed to be tobacco users.  However, individuals covered by the HDHP plan can avoid the tobacco surcharge without taking the biometric test in

---

[1] As indicated by materials promoting the wellness program:

> By participating in the biometric screening, you authorize the results to be securely sent from Quest Diagnostics Blueprint for Wellness to CareAllies and their partner, the University of Michigan Health Management Research Center, who developed the Health Assessment. Both entities have extensive experience handling employee health care data.  Your health information is protected by Federal Health Information Privacy laws.  The data you disclose in the Health Assessment and the results of your biometric screening are confidential.  Honeywell gets aggregate, summary information, but does not have access to the individual health data.

Vasichek Decl. [Docket No. 5] Ex. B.

three ways: (1) enroll and participate in a tobacco cessation program (actual cessation is not required); (2) submit a biomedical screening report from their physician that shows they do not use tobacco; or (3) work with a Health Advocate to establish that they are nicotine free. Id. ¶¶ 30-31.

**B. Complaints filed by Honeywell Employees with the EEOC**

Three Honeywell employees recently filed complaints with the EEOC alleging that Honeywell's 2015 wellness program violates the Americans with Disabilities Act (ADA) and the Genetic Information Nondiscrimination Act (GINA). Def.'s Mem. Opp'n Prelim. Inj. [Docket No. 20] at 13; see also Schwartz Charge of Discrimination [Docket No. 8]; Hall Charge of Discrimination [Docket No. 9]. All three employees have already submitted to biometric testing for Honeywell's 2015 wellness program, and all three also participated in the biometric testing in 2014.[2] Two of the three employees have no spouse covered by Honeywell's insurance program; the third employee's spouse has already submitted to biometric screening for 2015. Gregg Decl. ¶¶ 32-33.

### III.  DISCUSSION

**A. Preliminary Injunction Standard**

A preliminary injunction is an extraordinary remedy, and the movant bears the burden of establishing its propriety. Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003). The court considers four factors in determining whether a preliminary injunction should issue: (1) the threat of irreparable harm to the movant in the absence of relief, (2) the balance between the

---

[2] In 2014, Honeywell did not charge the $500 biomedical surcharge or test for nicotine, but HSA contributions where offered to those who participated. Gregg Decl. ¶ 22.

harm alleged and the harm that the relief may cause the non-moving party, (3) the likelihood of the movant's ultimate success on the merits, and (4) the public interest. Dataphase Sys., Inc. v. C.L. Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc). No single factor is determinative. Id. at 113. Instead, the court considers the particular circumstances of each case, with the focus on the primary question of whether the "balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." Id.

### 1. Threat of Irreparable Harm

The EEOC argues that irreparable harm will result in two ways absent a preliminary injunction. First, the EEOC contends that it will be irreparably harmed because the agency "will not be able to carry out the purposes [of enforcement statutes] as intended by Congress." Pl.'s Mem. Supp. Prelim. Inj. [Docket No. 4] at 23. Further, the EEOC argues that Honeywell employees will suffer irreparable harm because they will "lose the right to decide without coercion whether to participate in Honeywell's biometric testing." Id. at 24. In contrast, Honeywell contends that the EEOC can continue with its investigation of Honeywell's program, thereby not suffering any harm, and that—should the EEOC later prevail on the merits—the only harm suffered by Honeywell employees is monetary, for which an adequate legal remedy of damages is available.

Irreparable harm is a threshold requirement for preliminary injunctive relief. Gelco Corp. v. Coniston Partners, 811 F.2d 414, 418 (8th Cir. 1987). Threat of irreparable harm requires more than a possibility of remote future injury, it requires a presently existing actual threat of injury. Rogers v. Scurr, 676 F.2d 1211, 1214 (8th Cir. 1982). "Wholly speculative" harm will not justify injunctive relief. Local Union No. 884, United Rubber Workers, Cork,

Linoleum & Plastic Workers v. Bridgestone / Firestone, 61 F.3d 1347, 1355 (8th Cir. 1995). "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." Rogers Grp, Inc. v. City of Fayetteville, Ark., 629 F.3d 784, 789 (8th Cir. 2010) (quotations omitted).

In this case, the EEOC cannot establish the threat of irreparable harm. First, as argued by Honeywell at the hearing, the EEOC can fulfill its enforcement obligations by continuing its investigation into the lawfulness of Honeywell's wellness program. Second, none of the Honeywell employees who have filed a complaint with the EEOC face an actual threat of injury because all three have already submitted to biometric testing for the 2015 calendar year. Gregg Decl. ¶¶ 32-33. Finally, even if the EEOC had authority to seek injunctive relief on behalf of Honeywell employees who have expressed concerns about the surcharges telephonically (but not yet filed a formal complaint), the EEOC has failed to demonstrate that such employees will face irreparable harm.[3] Specifically, the EEOC has not demonstrated that Honeywell's biometric testing jeopardizes any employees' right to privacy in their health information. Neither the EEOC nor the complaining employees allege that Honeywell's wellness program fails to comply with Federal Health Information Privacy laws. Under these circumstances, it appears that even if

---

[3] "When EEOC sues in its own name, it may litigate only those claims which have been subjected to the complete administrative processing required by Title VII." EEOC v. United States Steel Corp., Case No. 90-3041, 2013 U.S. Dist. LEXIS 22748 (W.D. Pa. Feb. 20, 2013) (quoting EEOC v. E. Hills Ford Sales, Inc., 445 F. Supp. 985, 987 (W.D. Pa. 1978)). Title VII requires the EEOC to: (1) receive a charge from an individual and notify the employer of the charge, (2) investigate that charge and related charges, (3) determine that "reasonable cause" exists to believe that discrimination occurred, and (4) attempt conciliation of all charges against the employer. See 42 U.S.C. § 2000e-5(b).

the EEOC prevails on the merits, any damage alleged by Honeywell employees can be cured through the most basic of legal remedies: monetary damages.

### 2. Balance of Harms

The next Dataphase factor is the balance between the irreparable harm to the movant, if any, and the injury granting an injunction will cause to the other interested parties. Dataphase, 640 F.3d at 113. The EEOC argues that Honeywell will not be harmed because the relief sought only seeks to ban surcharges, not the biomedical testing itself. Honeywell contends that its employees will be harmed because, if an injunction is imposed that freezes the levying of surcharges, employees will not be able to make an informed economic choice about whether they should participate in the biomedical testing. At the hearing, Honeywell argued that if an injunction was granted but Honeywell later prevailed on the merits, employees who did not submit to the biomedical testing during open season would not be eligible to participate in the wellness program until the next open season. These employees may face a lump-sum surcharge. In addition, if Honeywell is required to fund HSAs for employees who do not participate in the biomedical testing, Honeywell argues that it will not be able to recoup those funds, should it prevail on the merits. Finally, because Honeywell's health care costs are fixed, any anticipated revenue lost due to an injunction would be transferred to all Honeywell employees in the form of increased health care contributions. Gregg Decl. ¶ 39.

Because the EEOC has not established that Honeywell employees will face irreparable harm—and in light of the additional harms faced by Honeywell and its employees if an injunction were to be ordered—the balance of harm factor also weighs in favor of Honeywell. If an injunction freezing all surcharges is ordered now, Honeywell employees who opt-out of the

biometric screening may ultimately have to pay the surcharge if Honeywell prevails on the merits. On the other hand, if the EEOC prevails on the merits, Honeywell employees who were wrongfully assessed a surcharge based on their decision to forego the biometric testing can be made whole by a refund.

### 3.  Likelihood of Success on the Merits and the Public Interest

As expressed at the hearing, this case raises intriguing legal questions that relate to important public interest considerations. However, the remaining two Dataphase factors—the likelihood of success on the merits and an evaluation of the public interests at stake—need not be analyzed in detail to rule on this motion. Bandag, Inc. v. Jack's Tire & Oil, Inc., 190 F.3d 924, 926 (8th Cir. 1999) ("The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies."); see also Instruments v. Rivard Instruments, 479 F. Supp. 2d 968, 991 (N.D. Iowa 2007) (holding that "the lack of irreparable harm is sufficient ground for denying or vacating a preliminary injunction.") (citing Aswegan v. Henry, 981 F.2d 313, 314 (8th Cir. 1992)).

The Court also notes that the uncertainty surrounding the legal questions at issue here prevents the remaining Dataphase factors from weighing heavily in favor of either party. The EEOC argues that Honeywell is violating the ADA because the biomedical test associated with its wellness program constitutes an involuntary medical examination that is not job related. See 42 U.S.C. § 12112(d)(4)(A) ("A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity."); see also EEOC's Enforcement Guidance:

Disability-Related Inquiries and Medical Examinations of Employers under the Americans with Disabilities Act Q. 22 (2000) (available at http://www.eeoc.gov/policy/docs/guidance-inquiries.html) ("A wellness program is 'voluntary' as long as an employer neither requires participation nor penalizes employees who do not participate.").

Honeywell contends that its wellness program is covered under the ADA's safe harbor provision set forth in 42 U.S.C. § 12201(c)(2). The safe harbor provision waives application of ADA Subchapters I through III and Title IV against entities "establishing, sponsoring, observing or administering the terms of a bona fide benefit plan that are based on underwriting risks, classifying risks, or administering such risks that are based on or not inconsistent with state law."; see Seff v. Broward Cnty., 691 F.3d 1221, 1223 (11th Cir. 2012) (affirming district court decision that found an employer wellness program a "term" of a group health plan and thus protected by the safe harbor provision).

Further, even if Honeywell is not found to be a covered entity under the ADA's safe harbor provision, Honeywell argues that its wellness program comports with the ADA's voluntary wellness program provision. To this end, Honeywell argues that the EEOC's enforcement guidance deserves no deference in light of Congresses' express approval of surcharges used in conjunction with wellness programs, as expressed in the Affordable Care Act ("ACA"). See 42 U.S.C. § 2705(j)(3)(A) ("A reward may be in the form of a discount or rebate of a premium or contribution, a waiver of all or part of a cost-sharing mechanism (such as deductibles, copayments, or coinsurance), **the absence of a surcharge**, or the value of a benefit that would otherwise not be provided under the plan.") (emphasis added). In short, Honeywell

contends that "Congress would not expressly endorse in one federal statute what is illegal under another pre-existing federal statute." Def.'s Mem. Opp'n Prelim. Inj. at 30.

The EEOC also alleges that Honeywell's wellness program violates GINA because the program collects medical information from covered spouses, who are considered "family members" under GINA. See 29 CFR § 1635.3(a)(1). Honeywell maintains that the biometric test does not constitute a "genetic test," which is defined as "analysis of human DNA, RNA, chromosomes, proteins, or metabolites, that detects genotypes, mutations, or chromosomal changes." 29 U.S.C. § 1191b(d)(7).

In sum, great uncertainty persists in regard to how the ACA, ADA and other federal statutes such as GINA are intended to interact. See, e.g., E. Pierce Blue, *Wellness Programs, the ADA, and GINA: Framing the Conflict*, 31 HOFSTRA LAB. & EMP. L.J. 367 (Spring 2014); THE EEOC, *Meeting of May 8, 2013 – Wellness Programs Under Federal Equal Employment Opportunity Laws*, www.eeoc.gov/eeoc/meetings/5-8-13/ (last visited November 5, 2014). As a general matter, EEOC enforcement actions are designed to be in the public interest. At the same time, Honeywell's wellness program—which aims to raise awareness of important health indicators among its employees without requiring specific behavior changes—appears to comply with the ACA's surcharge limits while also supporting one of the primary goals of healthcare reform: reducing overall health care costs. Recent lawsuits filed by the EEOC highlight the tension between the ACA and the ADA and signal the necessity for clarity in the law so that corporations are able to design lawful wellness programs and also to ensure that employees are aware of their rights under the law. See, e.g., EEOC v. Orion Energy Systems, Inc., Case No. 14-1019 (E.D. Wis. filed Aug. 20, 2014); EEOC v. Flambeau, Inc., Case No. 14-638 (W.D. Wis.

filed Sept. 30, 2014).  Should this matter proceed on the merits, the Court will have the opportunity to consider both parties' arguments after the benefit of discovery in order to determine whether Honeywell's wellness program violates the ADA and/or GINA.

## IV.  CONCLUSION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that the EEOC's motion [Docket No. 2] is **DENIED.**

BY THE COURT:


     s/Ann D. Montgomery  
ANN D. MONTGOMERY  
U.S. DISTRICT JUDGE

Dated:  November 6, 2014.